Opinion filed March 22, 2007












 
 
  
 
 







 
 
  
 
 




Opinion filed March 22, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00301-CR 

                                                     __________

 

                                 MICHAEL
DAVID LEWIS, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 238th District Court

                                                        Midland
County, Texas

                                                Trial
Court Cause No. CR 30,418

 



 

                                                                   O
P I N I O N

 

The jury found Michael David Lewis guilty of the
capital murder of Jacob Christopher Lee Sinclair, a nine-month-old child.  The trial court sentenced appellant to
confinement for life in the Institutional Division of the Texas Department of
Criminal Justice.  Appellant challenges
the legal and factual sufficiency of the evidence supporting his conviction in
two issues.  We affirm.

                                                              Standard
of Review 








In order to determine if the evidence is legally
sufficient, we must review all of the evidence in the light most favorable to
the verdict and determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307 (1979); Jackson v. State, 17 S.W.3d 664 (Tex.
Crim. App. 2000). To determine if the evidence is factually sufficient, the
appellate court reviews all of the evidence in a neutral light. Watson v.
State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part Zuniga
v. State, 144 S.W.3d 477 (Tex. Crim. App. 2004)); Johnson v. State,
23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d
404, 407-08 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996).  Then, the
reviewing court determines whether the evidence supporting the verdict is so
weak that the verdict is clearly wrong and manifestly unjust or whether the
verdict is against the great weight and preponderance of the conflicting
evidence.  Watson, 204 S.W.3d at
414-15; Johnson, 23 S.W.3d at 10-11.

                                                                   The
Evidence

The deceased baby=s
mother, Jena Rene Sinclair, testified that she began dating appellant in June
2004 when Jacob was approximately five months old.  She stated that Jacob and appellant seemed to
get along well when they initially began dating but that their relationship
started to deteriorate over time.  Jena
testified that she observed appellant becoming irritated with Jacob in August
2004.  She related incidents where
appellant scolded her for paying too much attention to Jacob.  She also observed Jacob resisting having
contact with appellant.

Appellant and Jena had planned to move into a
trailer on November 1, 2004, along with Jacob. 
They were unable to move into the trailer on that date, however, because
of a problem with the utilities at the trailer. 
They eventually moved into the trailer on Friday, November 5, 2004.  It appeared that Jacob had a cold when he
woke up on Saturday, November 6, 2004. 
Jena testified about an episode wherein appellant became agitated by
Jacob=s crying
on Saturday.  Appellant brought Jacob
into the bedroom where she was located, placed him on the floor, and then
slammed the bedroom door.








On the morning of Sunday, November 7, 2004, Jena
and appellant took Jacob to church with them.  
Jacob still seemed to have a bit of a cold on Sunday.  Jena and appellant dropped Jacob off at the
church nursery, but they were requested by the nursery to retrieve him before
the end of the church service because he was fussy.  After they returned to the trailer, Jena gave
Jacob a bath and then laid him down for a nap. 
Appellant also laid down for a nap at this time.  Jena attempted to do some laundry, but the
washing machine at the trailer was not operating properly.  She asked appellant to look at the
washer.  She reported that he appeared
agitated by the situation.  

While appellant looked at the washer, Jena stepped
out of the trailer to smoke a cigarette. 
Jena heard Jacob crying loudly soon after she stepped outside of the
trailer.  Upon opening the door of the
trailer to check on Jacob, Jena observed appellant holding Jacob.  She also observed that Jacob was still
crying.  After appellant told Jena that
he would take care of Jacob, she closed the door to the trailer and remained
outside.  She soon heard appellant
scream, AJena,
come here.@  She found appellant sitting in a chair
holding Jacob=s limp
body.  Appellant told her, AI don=t
know what=s going
-- I don=t know
what happened.  It=s
just like he went to sleep.@
Appellant and Jena immediately transported Jacob to Midland Memorial
Hospital.  On the trip to Midland
Memorial, appellant told Jena, AI
didn=t do
anything, I promise.@

Appellant did not testify at trial.  However, Deputy Steve Skaggs of the Midland
County Sheriff=s
Department testified that appellant gave the following oral recitation of the
events that transpired:

Mr. Lewis advised that they were B that he and Ms. Sinclair were at their
home with the baby and that the baby started crying and that he went in to get
the baby, try to get it to quit crying, and that Ms. Sinclair was outside
smoking a cigarette and that he brought the baby back into the living area and
sat down.  He did tell us that the baby
is very attached to the mother and throws a fit whenever she=s not around, and so at one point, the
mother came back into the house and Mr. Lewis advised her that everything was
okay, he was taking care of it and so she went back outside.  The baby continued to throw a fit, and at one
point, the baby was moving around, and at some point while he was holding the
baby, their heads bumped together, and so he was going to put the baby down on
the couch, and there=s
a wood partition between the seats on the couch, and so he was trying to clear
off a place to put the baby and the baby slipped out of his hands or fell and
hit his head on the wood partition at that point.

 

Appellant subsequently gave a recorded
statement to deputies.  Appellant=s recorded statement tracks the oral
statement reported by Deputy Skaggs.  In
the recorded statement, appellant estimated the distance of Jacob=s alleged fall to the wooden portion of
the couch to be two feet.  








The health-care providers that treated Jacob at
Midland Memorial determined that his condition was grave.  They transferred him to Cook Children=s Hospital in Fort Worth by air
ambulance.  Jacob died at Cook on
November 8, 2004, after the physicians that treated him there  declared him Abrain
dead.@  Dr. Angel Hernandez, a pediatric neurologist
who treated Jacob at Cook, testified that he died as a result of
non-accidental, blunt force trauma to the brain.  He based his conclusion that the cause of
death was not an accident because a simple fall would not have created the type
of life threatening brain injuries that Jacob suffered.  Dr. Hernandez specifically testified that a
fall of two to three feet onto the wooden portion of the couch would not have
caused the severe brain injury that Jacob suffered.  He further testified that Jacob would have
become unconscious almost immediately after the infliction of the severe blunt
force trauma.

Dr. Mark Andrew Krouse is the pathologist who
performed the autopsy on Jacob=s
body.  He agreed with Dr. Hernandez in
his assessment of the severe and non-accidental nature of the fatal head injury
that Jacob suffered. He also testified that Jacob would have become unconscious
almost immediately after the injury.  Dr.
Krouse further testified that he observed thirty-five to forty bruises on Jacob=s body.

                                                                       Analysis

Appellant argues that the evidence is legally
insufficient to support his conviction because of the absence of direct
evidence regarding the manner in which he allegedly inflicted the fatal
injury.  In making this argument, he
contends that the State should have offered testimony from a grand juror to
support the allegation in the indictment of an unknown manner and means.  We disagree. 
When the evidence is inconclusive regarding the instrumentality that
caused the death, it is not necessary for the State to put into evidence
testimony that the grand jury used due diligence in attempting to ascertain the
manner and means by which the murder occurred. 
See Hicks v. State, 860 S.W.2d 419, 425 (Tex. Crim. App.
1993).  The evidence as to how appellant
may have caused the fatal blunt force trauma to a nine-month-old baby while the
two of them were alone was inconclusive. 









The evidence reflects that Jacob became
unconscious when he was in appellant=s
care.  The testimony of Dr. Hernandez and
Dr. Krouse established that Jacob would have become unconscious almost
immediately after the fatal injury was inflicted.  Their testimony also ruled out the
possibility that the fatal injury occurred as a result of an accident.  Dr. Hernandez specifically rejected appellant=s account of dropping Jacob onto the
wooden portion of the couch as the cause of Jacob=s
severe head injury.  Reviewing all of the
evidence in the light most favorable to the verdict, we conclude that a
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Appellant=s first issue is overruled.

Appellant bases his factual sufficiency challenge
on the opinion nature of the physicians=
testimony and the evidence that he never injured his own children.  Contrary to appellant=s
characterization, the testimony from Dr. Hernandez and Dr. Krouse was
compelling.  Furthermore, the evidence
regarding how appellant interacted with his own children had little, if any,
relevance to his conduct with Jacob.  We
conclude that the evidence supporting appellant=s
conviction was not so weak that the verdict was clearly wrong and manifestly
unjust.  Furthermore, the verdict was not
against the great weight and preponderance of the conflicting evidence.  Appellant=s
second issue is overruled.

                                                              This
Court=s Ruling

The judgment of the trial court is affirmed.

 

 

TERRY McCALL

JUSTICE

 

March 22, 2007

Do not publish.  See
Tex. R. App. P. 47.2(b).

Panel
consists of: Wright, C.J., and

McCall,
J., and Strange, J.